## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

REGINALD HOLLIE,
     Prisoner,

v.
                               Case No. 8:22-cv-1368–KKM–AEP
                               Case No. 8:17-cr-615-KKM-AEP

UNITED STATES OF AMERICA,
     Respondent.
_____

## ORDER

Following a jury trial, Reginald Hollie was convicted for being a felon in possession of a firearm and the district court sentenced him to 235 months. After his conviction and sentence were affirmed on appeal, Prisoner Reginald Hollie now moves under 28 U.S.C. § 2255 to vacate his conviction. He raises four grounds for relief. Because his claims lack merit, his motion under § 2255 is denied.

## I. Background

Hollie was charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924. (Crim. Doc. 1.) At trial, the United States presented evidence that law enforcement officers encountered Hollie in a parking lot where he was trying to open car doors. (Crim. Doc. 75 at 93–96.) As the officers approached him, Hollie removed a firearm from his waistband and placed it beneath a tire. (*Id*.) The parties stipulated that Hollie previously had been convicted of a felony offense and that his civil rights, including his right to possess a firearm, had not been restored. (*Id*. at 132–33.) After a three-day trial, the jury found Hollie guilty as charged. (Crim. Doc. 41.)

The United States Probation Office recommended that Hollie be sentenced as an armed career criminal under 18 U.S.C. § 924(e) based on his prior Florida convictions for delivery of cocaine in 2001, 2002, and 2005. (Crim. Doc. 53 at ¶¶ 23, 36, 39, and 50.) At sentencing, Hollie lodged no factual or legal objections to the presentence report. (Crim. Doc. 77 at 3–8.) The district court sentenced Hollie to a low-end guidelines sentence of 235 months' imprisonment. (Crim. Doc. 60 at 2.) On appeal, the circuit court affirmed Hollie's conviction and sentence. *United States v. Hollie*, 817 F. App'x 880 (11th Cir. 2020).

## II. Legal Standards

Section 2255 allows a federal prisoner to "bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215–16 (11th Cir. 2014). But "[o]nce the defendant's chance to appeal has been waived or exhausted, [a court is] entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (*per curiam*) (citing *Frady*, 456 U.S. at 165). Because collateral review is not a substitute for direct appeal, a defendant must raise on direct appeal all available claims. Relief under Section 2255 is reserved "for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir.

Unit A Sep. 1981)). For example, a claim of ineffective assistance of counsel is a claim that "should usually be raised in a motion under 28 U.S.C. § 2255." *United States v. Curbelo*, 726 F.3d 1260, 1267(11th Cir. 2013).

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its

two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Hollie must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Hollie must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Hollie cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We

> are not interested in grading lawyers' performances; we
> are interested in whether the adversarial process at trial,
> in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

## III. Analysis

Hollie moves to vacate his conviction and sentence under Section 2255 and raises four grounds for relief: (1) that his prior Florida cocaine-related convictions are not "serious drug offenses" under the Armed Career Criminal Act (ACCA) (Ground One); (2) that counsel was ineffective for withholding exculpatory evidence that showed law enforcement previously found other firearms in the area of the crime scene (Ground Two); (3) that counsel was ineffective for not objecting to the district court allowing law students to remain in the jury room during deliberations (Ground Three); and (4) that counsel was ineffective for not objecting to the prosecutor's improper closing arguments (Ground Four).

### A.        Ground One

Hollie claims that his prior Florida convictions for delivery of cocaine are not predicate serious drug offenses under the ACCA, and therefore, his sentence was improperly enhanced. Hollie relies on *United States v. Jackson*, 36 F.4th 1294

(2022) (*Jackson I*), which, at the time Hollie initiated this action, held that Florida cocaine-related offenses did not qualify as predicate serious drug offenses under the ACCA because Florida's controlled substance schedule included ioflupane and was therefore broader than the relevant version of the federal controlled substances schedule. *See United States v. Penn*, 63 F.4th 1305, 1311 (11th Cir. 2023) (explaining that "a state conviction cannot be an ACCA predicate if the statute of conviction proscribes a broader range of conduct than what Section 924(e)(2)(A)(ii) defines as a 'serious drug offense'").

The United States opposes the relief Hollie seeks in Ground One, arguing that Hollie has procedurally defaulted this claim by failing to raise the issue on direct appeal. (Civ. Doc. 11 at 5–7.) Alternatively, the United States argues that Ground One lacks merit because *Jackson I* was wrongly decided. (*Id*. at 12–18.)

       1.    Ground One lacks merit.

After the parties' initial briefing in this action, the Eleventh Circuit vacated *Jackson I* and reached the opposition conclusion in *United States v. Jackson*, 55 F.4th 846 (11th Cir. 2022) (*Jackson II*). *Johnson II* found that the "ACCA's definition of a state 'serious drug offense' incorporates the version of the federal controlled substances schedules in effect when the defendant was convicted of the prior state drug offense." *Id*. at 854. *Jackson II* concluded that the defendant's 1998 and 2004 Florida cocaine-related convictions qualified as ACCA predicate serious drug offenses because Florida's controlled substance schedules included ioflupane until 2017 and the federal controlled substance schedules also included ioflupane until 2015. *Id*. at 851 and nn. 3–4. Therefore, the *Jackson II* court reasoned, at the time Jackson was convicted of the prior cocaine-related offenses in 1998 and 2004,

Jackson's state convictions were defined in the same way that the ACCA defined a serious drug offense. *Id*. As a result, Jackson's prior convictions qualified as predicate serious drug offenses under the ACCA.

Subsequently, Jackson sought certiorari, which the United States Supreme Court granted on May 15, 2023. *Jackson v. United States*, 143 S. Ct. 2457, No. 22-6640 (2023). The Supreme Court also consolidated *Jackson II* with another case, *see United States v. Brown*, 143 S. Ct. 2458, No. 22-6389 (2023), and the cases remain pending.

Until the Supreme Court holds otherwise, *Jackson II* controls the issue of whether a Florida cocaine-related conviction qualifies as a ACCA predicate serious drug offense. *See United States v. Kelly*, No. 23-10857, 2024 WL 886860, at *3 (11th Cir. Mar. 1, 2024) ("This issue is controlled by our decision in *Jackson II*. The prior-panel-precedent rule requires subsequent panels to follow the precedent of the first panel to address the relevant issue, unless and until the first panel's holding is overruled by [the circuit court] sitting *en banc* or by the Supreme Court. The granting of *certiorari* alone does not affect our precedent.") (citations omitted); *see United States v. Grant*, No. 22-10910, 2023 WL 5230970, at *5–6 (11th Cir. Aug. 15, 2023) ("Although the Supreme Court will soon review *Jackson II*, a grant of certiorari by the Supreme Court does not in itself change the law.").

*Jackson II* forecloses Hollie's claim. Like Jackson, Hollie's prior Florida cocaine-related convictions all predate 2015, when Florida's cocaine-related offenses were defined in the same way that the ACCA defined a serious drug offense. *See Kelly*, 2024 WL 886860, at *3 (applying *Jackson II* and ruling that, because "the defendant's prior Florida cocaine-based drug convictions all

predated 2015[,]" those convictions were serious drug offenses under the ACCA); *see also Grant*, 2023 WL 5230970, at *5–6 (applying *Jackson II* and ruling that the defendant's 2001 Florida cocaine-related convictions qualified as predicate serious drug offenses under the ACCA). Consequently, Hollie's prior Florida convictions for delivery of cocaine in 2001, 2002, and 2005 are predicate serious drug offenses. He is entitled to no relief on this claim.

### 2. Ground One is procedurally defaulted.

Hollie's claim in Ground One fails for the additional reason that he procedurally defaulted this claim by failing to raise it on appeal. "[A] 'procedural default' occurs when a defendant raises a new challenge to his conviction or sentence in a § 2255 motion." *Seabrooks v. United States*, 32 F.4th 1375, 1383–84 (11th Cir. 2022) (citing *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004)). "The procedural-default rule is . . . a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments.'" *Foster v. United States*, 996 F.3d 1100, 1106 (11th Cir. 2021) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)).

"If a defendant fails to raise an issue on direct appeal, he may not present the issue in a § 2255 proceeding unless his procedural default is excused." *Seabrooks*, 32 F.4th at 1384 (citing *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011)). "To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice, or actual innocence." *Id*.

### a. Cause

As cause to excuse his procedural default, Hollie argues that he could not have advanced this claim because *Jackson I* had not been issued when he appealed.

(Civ. Doc. 12 at 2.) He acknowledges that counsel's "failure to anticipate a change in the law will not support a claim of ineffective assistance of appellate counsel," (*id*. at 4), but he nevertheless argues that appellate counsel's failure to do so prejudiced him (*id*. at 6). According to Hollie, "the fact that the *Jackson* Court . . . vacated defendant Jackson's sentence on an issue that is exactly like Mr. Hollie's claim at Ground One" shows that "his sentence would have been vacated on direct appeal had counsel raised [a similar]claim." (*Id*. at 6.)

The circuit court has consistently held that "[a]n attorney's failure to anticipate a change in the law does not constitute ineffective assistance." *Steiner v. United States*, 940 F.3d 1282, 1293 (11th Cir. 2019); *see also Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986) ("[D]efendants are not entitled to an attorney capable of foreseeing the future development of constitutional law."). And, even if non-binding precedent existed from which counsel could have formulated a *Jackson*-based argument, counsel is not deficient for failing to do so. *See Bajorski v. United States*, 276 F. App'x 952, 954 (11th Cir. 2008) ("Even if a claim based upon an anticipated change in the law is reasonably available at the time counsel failed to raise it, such failure does not constitute ineffective assistance."); *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013) ("[I]t generally does not fall below the objective standard of reasonableness for . . . counsel to fail to raise a claim in anticipation that undeniably would lose under current law but might succeed based on the outcome of a forthcoming [appellate] decision."); *Pitts v. Cook*, 923 F.2d 1568, 1573–74 (11th Cir. 1991) ("[L]awyers rarely, if ever, are required to be innovative to perform within the wide range of conduct that encompasses the reasonably effective representation mandated by the

Constitution."). Consequently, Hollie cannot show that appellate counsel's failure to anticipate *Jackson I* constitutes cause to excuse his procedural default of his claim in Ground I.

> b.   Prejudice

Even if Hollie could establish that appellate counsel's performance was ineffective, he would have to show that he suffered actual prejudice from the alleged ineffectiveness. "'Actual prejudice means more than just the possibility of prejudice; it requires that the error worked to the petitioner's actual and substantial disadvantage, infecting his entire trial with error constitutional dimensions.'" *Granda v. United States*, 990 F.3d 1272, 1288 (11th Cir. 2021) (quoting *Fordham v. United States*, 706 F.3d 1345, 1350 (11th Cir. 2013). "The actual prejudice standard is 'more stringent that the plain error standard.'" *Id.* (quoting *Parks v. United States*, 832 F.3d 1244, 1245 (11th Cir. 1987)).

Hollie cannot show he was prejudiced by appellate counsel's performance because, as explained in Section III.A.1., *supra*, Hollie's prior Florida convictions for delivery of cocaine in 2001, 2002, and 2005 constitute predicate serious drug offenses under binding circuit precedent.

> c.   Actual Innocence

Because Hollie demonstrates neither cause nor prejudice, his procedural default can be excused only if he demonstrates his actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998). "[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 623 (quoting *Sawyer v. Whitely*, 505 U.S. 333, 339 (1992)). The "prototypical example of 'actual innocence' in a colloquial sense is the case where the government has convicted the wrong person

of the crime." *Sawyer*, 505 U.S. at 349. Hollie does not contend that he is factually innocent of his offense of conviction. Consequently, he is not excused from his procedural default of his claim in Ground One.

> 3.  *Dupree* affords Hollie no relief.

With the district court's permission, Hollie filed a supplemental memorandum in which he argues that his 2005 Florida conviction for attempted delivery of cocaine is not a serious drug offense under the ACCA after *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (*en banc*). (Civ. Doc. 15.) The United States responded that *Dupree* is inapposite and affords Hollie no relief. (Civ. Doc. 16.)

Hollie's reliance on *Dupree* is misplaced. *Dupree* concerns whether inchoate crimes qualify as "controlled substance offenses" under the career offender sentencing guideline and does not concern the definition of a serious drug offense under the ACCA. *Dupree* holds that "the definition of 'controlled substance offense' in [U.S. Sentencing Guidelines] § 4B1.2(b) does not include inchoate offenses." However, "the ACCA's definition of a serious drug offense is broader than the guidelines definition of a drug trafficking or a controlled substance offense because of the ACCA's use of the term 'involving.'" *United States v. White*, 837 F.3d 1225, 1235 (11thth Cir. 2016).[1] Accordingly, *Dupree* affords Hollie no relief. Hollie's 2005 Florida conviction for attempted delivery of cocaine remains a serious drug offense under the ACCA. *See Penn*, 63 F.4th at 1310–17 (holding that Florida convictions for sale of cocaine categorically qualify as predicate serious

---

[1] Furthermore, *Dupree* was issued on January 18, 2023, more than four years after Hollie's conviction. "For a new rule to be retroactive, the Supreme Court must make it retroactive on collateral review." *In re Joshua*, 224 F.3d 1281, 1283 (11th Cir. 2000). The Supreme Court has not done so. *See Seymore v. United States*, No. 2:23-cv-469-SPC-NPM, 2024 WL 50805, at * 6 (M.D. Fla. Jan. 4, 2024).

drug offenses under the ACCA and reasoning that "Florida's prohibition on drug sales, even if defined to include an attempted transfer, is not an inchoate offense[ but rather,] attempts to transfer drugs are part of completed sale offenses"); *see also United States v. Smith*, No. 22-10028, 2024 WL 177988, at * 3 (11th Cir. Jan. 17, 2024) (same).

### B.     Ground Two

Hollie claims that, after he was convicted at trial, he discovered that trial counsel withheld evidence that the law enforcement officer who arrested him previously found firearms "in the same vicinity where the officers testified that they found the firearm in dispute." (Civ. Doc. 2 at 5; Civ. Doc. 12 at 10.) Hollie argues that counsel was ineffective for both not advising him of the existence of this exculpatory evidence and not admitting it at trial because the evidence would have corroborated his defense, impeached the government's witnesses, and negated the charges against him. (*Id*.)

In his responsive affidavit, counsel denies withholding exculpatory evidence (Civ. Doc. 11-1 at 2–3):

> 7.  At no time did [counsel] ever withhold evidence from the Defendant.
>
> 8.  Prior to trial, [counsel] subpoenaed from Tampa Police Department Records section a record of any weapons recovered within Ybor City at or near the Broadway Bar located at 2227 E. 7th Ave. and N. 23rd Street, Ybor City, FL.
>
> 9.   Tampa Police Department provided the following record attached as Exhibit "A". This document was provided to the Defendant well prior to trial and even

discussed with the Defendant prior and during trial. As this Honorable Court can see there were five (5) weapons found in Ybor City by Tampa Police Department, three (3) of which were found after the events charged in the Indictment of September 24, 2017. More importantly, none of the five (5) listed weapons were found in or around the alleged crime scene, therefore relevance became an issue.

10. This issue became even more remote and irrelevant when the testimony at trial placed a handgun in the waist-band and hands of the Defendant as witnessed by an Officer on scene and who eventually recovered the handgun from under the front wheel of a vehicle parked in a parking lot at the exact location the Officer claims he saw the Defendant place it.

11. Since there were no other weapons recovered at the scene and since the testimony placed a handgun in the hands of the Defendant, this information regarding other weapons became even more irrelevant and remote and [counsel] made the strategic decision not to even attempt to try to use this information for credibility purposes.

"The decision whether to present a line of defense, or even to investigate it, 'is a matter of strategy and is not ineffective unless the petitioner can prove that the chosen course, in itself, was unreasonable.'" *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002) (quoting *Chandler*, 218 F.3d at 1318). Similarly, "no absolute duty exists to investigate particular facts or a certain line of defense" so long as the decision to conduct or not to conduct an investigation is reasonable. *Chandler*, 218 F.3d at 1317. Counsel is not "required to 'pursue every path until it bears fruit or until all hope withers.'" *Williams v. Head*, 185 F.3d 384, 387 (11th Cir. 1994). "A

decision to limit investigation is 'accorded a strong presumption of reasonableness.'" *Mills v. Singletary*, 63 F.3d 999, 1021 (11th Cir. 1995).

Hollie is not entitled to relief on this claim. He points to no evidence to support his theory that law enforcement previously discovered firearms at the scene of the offense, nor does he explain how such evidence would undermine his conviction. Instead, counsel's uncontroverted affidavit demonstrates that he pursued Hollie's theory of the previous discovery of firearms near the scene by subpoenaing law enforcement records. But when those records confirmed that no firearms were discovered near the scene before the date of Hollie's offense, counsel made the strategic decision to abandon this theory of defense. That strategic decision is afforded deference and Hollie cannot overcome the strong presumption that counsel's strategic decision to abandon the theory was reasonable.

In his reply, Hollie vaguely argues that he is entitled to an evidentiary hearing on this issue because he has alleged sufficient facts that, if true, would entitle him to relief. (Civ. Doc. 12 at 10.) The fact that supports an evidentiary hearing, according to Hollie, is that "his attorney withheld evidence showing that officers had previously found firearms in the same vicinity where the officers testified that they found the firearm in dispute." (Civ. Doc. 12 at 10.)

An evidentiary hearing must be held on a motion to vacate "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The prisoner "is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014). "[A] petitioner need only

14

allege—not prove—reasonably specific, nonconclusory facts that, if true, would entitle him to relief. If the allegations are not affirmatively contradicted by the record and the claims are not patently frivolous, the district court is required to hold an evidentiary hearing." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (quotations and emphasis omitted, alteration in original). "However, a district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." *Winthrop-Redin*, 767 F.3d at 1215 (quotations omitted).

Hollie is not entitled to an evidentiary hearing on this claim because it is affirmatively contradicted by the record, patently frivolous, and, even if true, Hollie cannot show ineffective assistance of counsel if other firearms were located in the same vicinity. First, the record shows that counsel pursued Hollie's theory that law enforcement previously discovered firearms at the scene by subpoenaing law enforcement records. A report, which is attached to counsel's responsive affidavit, confirms counsel's statement that no firearms were discovered at the scene before the date of Hollie's offense. (Civ. Doc. 11-2.) Consequently, when the subpoenaed records disproved Hollie's theory, counsel abandoned it as "irrelevant and remote." (Civ. Doc. 11-1 at 3.) Hollie's claim that counsel withheld exculpatory evidence is affirmatively contradicted by the report. *See Aron v. United States*, 291F.3d 708, 714 n.5 (11th Cir. 2002) (concluding the district court did not abuse its discretion in declining to hold an evidentiary hearing when the record affirmatively contradicted the petitioner's allegations).

Furthermore, Hollie's suggestion that counsel would investigate a theory of defense but withhold exculpatory evidence discovered from that investigation is

patently frivolous. *See Winthrop-Redin*, 767 F.3d at 1217 ("The district court is entitled to discredit a defendant's newly-minted story . . . when that story is supported only by the defendant's conclusory statements."). And lastly, even if Hollie is correct that there was evidence of other firearms and that counsel's conduct was somehow deficient, Hollie cannot show prejudice based on the evidence admitted at trial.

### C.    Ground Three

Hollie claims that trial counsel was ineffective for not objecting to the district court allowing law students to remain in the jury room during deliberations. (Civ. Doc. 2 at 7; Civ. Doc. 12 at 6–9.) He claims that counsel refused to object "because the judge would get very angry if [counsel] objected to [the judge] allowing . . . 'students' into the jury room." (Civ. Doc. 12 at 8.) He argues that, because non-jurors were present during deliberations, prejudice against him must be presumed. (*Id*.)

In his responsive affidavit, counsel denies any knowledge supporting this claim: "[Counsel] has absolutely no information regarding nor corroboration of this allegation. [Counsel] is completely unaware that anyone was allowed to enter the jury room. . . . At no time has this very issue or concern ever [been] raised by the Defendant to his counsel prior to this 2255 Motion." (Civ. Doc. 11-1 at 3.) The Assistant U.S. Attorney who was lead counsel also asserts no awareness of any invasion of the jury room by non-jurors. (Civ. Doc. 11 at 20.) And nothing from the trial transcript or docket indicates anything of the sort transpired (I inherited the underlying criminal case and this § 2255 motion).[2]

---

[2] Both the trial judge and defense counsel acknowledged the presence of students from Stetson University College of Law in the courtroom during trial. (Crim. Doc. 75 at 158, 186–87, 188, 195.)

16

A federal prisoner seeking relief under § 2255 is entitled to an evidentiary hearing if his allegations, if true, would entitle him to relief. The allegations must be "reasonably specific, non-conclusory facts," *Winthrop-Redin*, 767 F.3d at 1216, but allegations that are "patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record" will not warrant an evidentiary hearing, *id. See also Ochoa v. United States*, 45 F.4th 1293, 1300 (11th Cir. 2022).

First, accepting as true that counsel refused to object when students were permitted to remain during jury deliberations, Hollie has not shown entitlement to relief. "[T]he primary if not exclusive purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence." *United States v. Olano*, 507 U.S. 725, 738–39 (1993). "There may be cases where an intrusion should be presumed prejudicial, . . . but a presumption of prejudice as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?" *Id.* at 739 (quotations omitted). Hollie's claim fails because he fails to show that he was prejudiced by counsel's deficient performance. He fails to explain how counsel's refusal to object to students' presence during jury deliberations (assuming that occurred) influenced those deliberations or otherwise prejudiced his defense. Hollie's vague suggestion of prejudice is insufficient considering the evidence of his guilt presented at trial, which established that law enforcement observed him remove a firearm from his waistband and place it beneath a tire. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th

---

On one occasion, the trial judge permitted the students to approach the bench to listen to discussions between the judge and counsel at sidebar. (*Id*. at 30.) But there is no indication that they were permitted to enter or observe jury deliberations.

Cir. 1991) (concluding that "because the evidence against [the defendant was] overwhelming, [the defendant could] not demonstrate[] that [counsel's] alleged errors, if true, would have so prejudiced his defense that there would be a reasonable probability that the result of the proceeding would have been different") (quotations and alterations omitted). Indeed, "[i]t is not enough for the [petitioner] to show that [counsel's decision not to object] had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland*, 466 U.S. at 693.

And Hollie has not shown entitlement to a hearing to develop this claim. Hollie offers no specific details and points to no record evidence supporting his allegation that law students were permitted to enter the jury room and remain during jury deliberations, much less that counsel refused to object. "A [§ 2255] petitioner is *not* entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (quotations omitted). Instead, this kind of outlandish allegation lands squarely in the "patently frivolous" camp. In his reply, Hollie argues that he has alleged sufficient facts to warrant an evidentiary hearing on this claim. (Civ. Doc. 12 at 6–9.) But he cites nothing in the trial transcript, docket entry, or even specific allegations that make such a claim anything besides bare speculation. If given an evidentiary hearing, Hollie intends to subpoena the trial judge, the trial judge's students, and defense counsel to develop this claim "because they are well familiar with the circumstances giving rise to [his] contentions." (*Id*. at n.7.) Additionally, he intends "to obtain copies of videos and/or other recordings that will show the

judge's 'students' entering the jury room during deliberations." (*Id*. at 7.)Hollie is not entitled to an evidentiary hearing on this claim. He offers only his unsupported allegation that counsel refused to object when the district court permitted students to remain during jury deliberations, and he neglects to describe how counsel's performance prejudiced him. Because his claim is not supported "by credible third party affidavits or other documentary evidence," he is not entitled to an evidentiary hearing on this claim. *See Matthews v. United States*, 533 F.2d 900, 902 (5th Cir. 1976) (reasoning that a petitioner may be entitled to an evidentiary hearing when he "goes beyond mere allegations by presenting credible affidavits that raise a substantial inference that [indicates a right to relief]"); *see also Tejada*, 941 F.2d at 1559 ("[W]hen considering whether an evidentiary hearing should be held on habeas claims based on occurrences outside the record, no hearing is required if the allegations viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.") (quotations omitted).

### D.    Ground Four

Hollie claims that counsel was ineffective for not objecting when the prosecutor improperly vouched for the credibility of its witness. (Civ. Doc. 2 at 8.) He points to the following closing arguments made by the prosecutor (Crim. Doc. 76 at 36–38):

> Don't be distracted by any allegation that Miles[3]
> isn't trustworthy because he reported to the police that

---

[3] Jerimel Miles worked as a security officer at the Broadway Bar located across the street from the parking lot where law enforcement discovered Hollie in possession of a firearm. (Crim. Doc. 75 at 17–36.) On direct examination, he testified that he reported to law enforcement that Hollie possessed a gun and threatened him. (*Id*. at 34–35) On cross examination, he testified that he did not report to law enforcement bar fights or drug possession. (*Id*. at 38–41.)

> the defendant threatened to shoot him but failed to report a fight in the bar. . . .
>
> Miles got on the stand in this courtroom and he was brutally honest. He admitted his failure the night he got stabbed. It was his fault. He admitted that he knows that people in that club possess marijuana. He admitted to two things that were his own failure that night.
>
> He is honest to a fault. And the defendant wants you to believe that Miles is dishonest when it hurts the defendant, but he's honest when it helps the defendant. And these are things that you should think about when you're evaluating Miles' testimony.

Hollie complains that the prosecutor's description of its witness as "brutally honest" "suggests to the jury that there may be additional evidence known to the prosecutor that supports the witness's credibility" and that "the prosecutor, as a representative of the government, should be trusted because of his status." (Civ. Doc. 2 at 8.)

In his responsive affidavit, counsel represents that he made the strategic decision not to object to the prosecutor's comments because the comments "were in passing and [were] not a focus [of the] closing arguments to the jury[,]" and therefore did not prejudice Hollie. (Civ. Doc. 11-1 at 4.) Hollie's reply contains no response to counsel's affidavit. (Civ. Doc. 12.)

"Improper vouching occurs if the prosecutor makes explicit personal assurances of a witness's veracity, or indicates that information not presented to the jury supports a witness's testimony." *Hong v. Sec'y, Dep't of Corr.*, 478 F. App'x 648, 650 (11th Cir. 2012) (citing *United States v. Epps*, 613 F.3d 1093, 1100 (11th Cir. 2010)). "A prosecutor is permitted to comment on the credibility of a witness

without personally vouching for a witness's credibility." *Hong*, 478 F. App'x at 650 (citing *United States v. Lopez*, 590 F.3d 1238, 1257 (11th Cir. 2009)). "Improper vouching requires a determination that the jury reasonably believed 'the prosecutor was indicating a personal belief in the witness' credibility,' but does not prohibit arguments about credibility." *Hong*, 478 F. App'x at 650 (quoting *Lopez*, 590 F.3d at 1256).

Hollie fails to show counsel's strategic decision not to object to the prosecutor's comments about the witness's credibility was deficient. Whether the prosecutor's comments in isolation amounted to improper vouching or otherwise suggesting to the jury that evidence not presented to the jury supported the witness's credibility, the prosecutor's comments must be analyzed in the context in which the prosecutor emphasized that the witness had admitted his own faults and that the defense suggested conflicting narratives about the witness's credibility. Hollie cannot show counsel was ineffective for not advancing a meritless "improper vouching" objection. *See Hong*, 478 F. App'x at 650 (concluding that counsel was not ineffective for not objecting because the prosecutor's statements "that the witnesses were credible based on the evidence presented, the situations involved, and training of the witnesses" did not constitute improper vouching); *Hollis v. United States*, 958 F.3d 1120, 1124 (11th Cir. 2020) ("[C]ounsel [does] not perform deficiently by failing to raise a meritless objection.").

Furthermore, Hollie fails to overcome the strong presumption that counsel's strategic decision not to object was reasonable. The record shows that the prosecutor's comments concerning the witness's credibility were limited to those

cited above, and therefore, counsel's strategic choice not to object because the comments were "in passing" and "not a focus" of the prosecutor's argument constitutes a reasonable, strategic choice made in the exercise of his professional judgment. *See Thomas v. United States*, 596 F. App'x 808, 810 (11th Cir. 2015) (concluding that counsel's decision not to object to testimony was a reasonable, strategic choice).

Finally, even if counsel performed deficiently by not objecting to the prosecutor's comments about the witness's credibility, Hollie's claim nevertheless fails because he fails to explain how he was prejudiced by counsel's performance. Considering the evidence of Hollie's guilt presented at trial, his mere suggestion of prejudice is insufficient. *See Thomas*, 596 F. App'x at 810 (concluding that the petitioner could not demonstrate he was prejudiced by counsel's strategic choice not to object to credibility-bolstering testimony "because the government presented strong evidence of [the defendant's] guilt"). Hollie fails to show that there is a reasonable probability that, but for counsel's decision not to object to the prosecutor's closing argument, the result of the proceeding would have been different. *See Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (explaining that "habeas petitioners must affirmatively prove prejudice because attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial") (quotations omitted).

## IV.   No Certificate of Appealability

Hollie is not entitled to a certificate of appealability (COA). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first

issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Hollie must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Hollie is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

## V.   Conclusion

Hollie's amended motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 2) is **DENIED** and a certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is similarly **DENIED**. Hollie must obtain permission from the circuit court to appeal in forma pauperis. The clerk is directed to enter a judgment against Hollie, close this case, and enter a copy of this order in the criminal case.

**ORDERED** in Tampa, Florida, on March 20, 2024.

Kathryn Kimball Mizelle
United States District Judge